IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PATHFINDER SOFTWARE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-633 |
| | ) | |
| CORE CASHLESS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Pathfinder Software, LLC ("Pathfinder") brings this action against Defendant Core Cashless, LLC ("Core Cashless"), alleging common law trademark infringement; false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (2012); and unfair and deceptive trade practices in violation of state statutes, N.C. Gen. Stat. § 75-1.1 (2015). (Compl. 9–12, ECF No. 1.) Before the Court are (1) Core Cashless' Motion to Dismiss for lack of personal jurisdiction and for improper venue, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure (ECF No. 10) and (2) Core Cashless' Motion Asking the Court to Disregard Plaintiff's Brief in Surreply (ECF No. 20). The Court heard oral argument on August 5, 2015. For the reasons below, the Court grants both motions.[1]

---

[1] Also before the Court is Core Cashless' Consent Motion for Extension of Time to File Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF No. 17). Because Core Cashless has already filed its reply, the Court grants this motion retroactively and considers Core Cashless' reply to be timely. See Melvin v. Soc. Sec. Admin., No. 5:09-CV-235-FL, 2010 WL 3984607, at *1 n.1 (E.D.N.C. Oct. 8, 2010).

I.  **BACKGROUND**

Pathfinder, a North Carolina company, "provides specialty software products and cashless payment systems for amusement, leisure, and entertainment industries in North Carolina and around the world." (Compl. ¶¶ 2, 6, ECF No. 1.) Core Cashless, a Kansas company, also provides software and cashless payment systems for the amusement and recreation industries. (Id. ¶¶ 3, 17.) Its products include a mobile application that allows smartphone users to save admission tickets for entertainment venues on their phones. (Def.'s Reply 4, ECF No. 18.) The application is available to download through GooglePlay, the official application store for Android smartphones and tablets. (Id.) At least three North Carolina residents have downloaded the application. (Pl.'s Opp'n 5, ECF No. 15.) The application, however, is not compatible with any entertainment venue in North Carolina, as none use the Core Cashless system. (Def.'s Reply 4 n.1, ECF No. 18.)

Core Cashless operates as a limited liability company in Kansas, with its principal place of business in Kansas. (Owen Decl. ¶ 3, ECF No. 11-1.) It is not registered to do business in North Carolina and has no offices, bank accounts, real estate, or personal property in the state. (Id. ¶¶ 6–9.) No Core Cashless employees or agents live or work in North Carolina, and none have traveled to North Carolina on business. (Id. ¶¶ 10–11.) Core Cashless does, however, have one customer in North Carolina: the Billy Graham Evangelistic Association's Billy Graham Library ("Library"). (Def.'s Mem. 6, ECF No. 11.) Through a service contract, Core Cashless provides software support to the Library for $7,000 per year. (Id.; Owen Decl. ¶¶ 16–17, ECF No. 11-1.) Core Cashless' customers also include a water park in Georgia that is owned by a North Carolina company, BPR

2

Properties.  (See Press Release, ECF No. 15-2; Def.'s Reply 3, ECF No. 18.)  In 2014, Core Cashless issued a press release announcing that it had "partner[ed] up with North Carolina based BPR Properties" to provide software systems for the Georgia water park.  (Press Release, ECF No. 15-2.)  Core Cashless published the press release on its website and posted links to the press release on its Facebook and Twitter pages.  (See id.; Facebook Post, ECF No. 15-9; Twitter Post, ECF No. 15-10.)

Core Cashless maintains a website that explains the company's history and how cashless payment systems work.  (Owen Decl. ¶¶ 19–20, ECF No. 11-1.)  Through a feature called "Contact CORE Today," visitors can submit an inquiry, along with their name and contact information, directly through the website.  (Id. ¶ 21; see Website Pages, ECF No. 15-12.)  After a visitor submits an inquiry, a Core Cashless representative follows up through email.  (Pl.'s Opp'n 15, ECF No. 15; see Fitzgerald Decl. ¶¶ 4–5; ECF No. 15-3.)  At least one North Carolina resident has submitted an inquiry through Core Cashless' website and engaged in follow-up discussions with a Core Cashless representative.  (See Fitzgerald Decl. ¶¶ 4–7; ECF No. 15-3.)  Another website feature allows visitors to view demonstrations of Core Cashless' product and complete a mock transaction, using a test credit card, for the purpose of testing the product.  (Pl.'s Opp'n 14, ECF No. 15.)  Visitors cannot make purchases through the website.  (Owen Decl. ¶ 22, ECF No. 11-1.)

Pathfinder, in 2010, developed and introduced a logo known as the "Circular Path Mark," which it uses for all of its services, customer interactions, and advertising.  (Compl. ¶ 10, ECF No. 1.)  Core Cashless, until 2013, used a rectangular mark on its goods and services.  (Id. ¶ 18.)  Around early 2013, it introduced a circular mark, along with a marketing

3

campaign featuring the mark. (Id. ¶¶ 20–21.) Around November 2013, Core Cashless introduced a second circular mark for its mobile application. (Id. ¶ 24.) This lawsuit arises out of the alleged similarities between Pathfinder's Circular Path Mark and Core Cashless' two circular marks. Core Cashless has filed a Motion to Dismiss for lack of personal jurisdiction and for improper venue, as well as a Motion Asking the Court to Disregard Plaintiff's Brief in Surreply.

## II. MOTION TO DISREGARD SURREPLY

Following the ordinary course of briefing on Core Cashless' Motion to Dismiss, Pathfinder filed a surreply (ECF No. 19), prompting Core Cashless to file a Motion Asking the Court to Disregard Plaintiff's Brief in Surreply. Though the Local Rules do not expressly prohibit surreplies, "[a] surreply is not generally allowed under this district's Local Rules." Luna-Reyes v. RFI Constr., LLC, 57 F. Supp. 3d 495, 498 (M.D.N.C. 2014) (citing L.R. 7.3). "Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply." Fulk v. Norfolk S. Ry. Co., 35 F. Supp. 3d 749, 751 n.1 (M.D.N.C. 2014) (quoting DiPaulo v. Potter, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010)). Absent new arguments, "a surreply is unnecessary." Adefila v. Select Specialty Hosp., 28 F. Supp. 3d 517, 522 n.3 (M.D.N.C. 2014).

Here, Core Cashless raises no new arguments in its reply. Pathfinder does not contend otherwise, arguing instead that a surreply is "necessary in fairness . . . to correct . . . factual errors and legal errors" in Core Cashless' reply. (Pl.'s Surreply Opp'n 1, ECF No. 21.) Pathfinder's surreply, however, does not correct any statements of fact or law in Core Cashless' reply; rather, it presents legal arguments couched as corrections.

4

Accordingly, the Court grants Core Cashless' Motion Asking the Court to Disregard Plaintiff's Brief in Surreply and will not consider Pathfinder's surreply when evaluating Core Cashless' Motion to Dismiss.

## III. MOTION TO DISMISS

Core Cashless moves to dismiss this action for lack of personal jurisdiction, pursuant to Rule 12(b)(2), and improper venue, pursuant to Rule 12(b)(3). Because the Court concludes that it lacks personal jurisdiction over Core Cashless, it will not evaluate whether venue in this district is proper.

### A. Personal Jurisdiction Standard

On a personal jurisdiction challenge, the plaintiff bears the burden of ultimately proving personal jurisdiction by a preponderance of the evidence. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). When, however, as here, the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing—relying instead on the motion papers, supporting legal memoranda, and allegations in the complaint[2]—the plaintiff need only make a prima facie showing of personal jurisdiction. See id.; Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009). "[A] plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014) (citing Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003)). However, a threshold prima facie finding of

---

[2] The Court may also consider supporting affidavits. Wright v. Zacky & Sons Poultry, LLC, No. 1:14cv570, 2015 WL 2357430, at *1 n.1 (M.D.N.C. May 15, 2015) (citing Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014)).

5

jurisdiction does not settle the issue, as the plaintiff "must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005).

When considering whether the plaintiff has made a prima facie showing of jurisdiction, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Universal Leather, 773 F.3d at 558 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). Allegations of the complaint are taken as true, however, "only if they are not controverted by evidence from the defendant." Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013). "Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." Id. When both sides present evidence, the court must resolve factual conflicts in favor of the plaintiff for the limited purpose of determining whether it has made a prima facie showing of jurisdiction. Id.

A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." Universal Leather, 773 F.3d at 558. North Carolina's long-arm statute "permits the exercise of personal jurisdiction . . . to the outer limits allowable under federal due process." Id. (citing N.C. Gen. Stat.

6

§ 1-75.4(1)(d); Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)). The two-prong test therefore "merges into a single question" when North Carolina is the forum state, allowing the court to proceed directly to the constitutional analysis. See Universal Leather, 773 F.3d at 558–59; ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012).

Under the Due Process Clause of the Fourteenth Amendment, two paths permit a court to exercise personal jurisdiction over a nonresident defendant. Universal Leather, 773 F.3d at 559. One path is general jurisdiction, "which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." Walden v. Fiore, 134 S. Ct. 1115, 1121 n.6 (2014). The other path is specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" Id. (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011)).

Courts can exercise general jurisdiction over a nonresident corporation only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear, 131 S. Ct. at 2851. The Supreme Court has "not foreclose[d] the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Daimler AG v. Bauman, 134 S. Ct. 746, 761 n.19 (2014) (citation omitted).

As for specific jurisdiction, courts employ a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process.

Universal Leather, 773 F.3d at 559.  Courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable."  Id. (alteration in original) (quoting Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012)).

The first prong, purposeful availment, is rooted in the concept of minimum contacts and contemplates whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there."  Id. (alteration in original) (quoting Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989)).  This analysis is "flexible" and involves a case-by-case consideration of several factors.  Id. at 560 (quoting Tire Engineering, 682 F.3d at 302).  In the business context, those factors include but are not limited to:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

Id. (quoting Consulting Engineers, 561 F.3d at 278).  Relevant to the analysis is the quality and nature of the defendant's connections, rather than the number of contacts between the defendant and the forum state.  Tire Engineering, 682 F.3d at 301.  The relationship between

8

the defendant, the forum state, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State." Walden, 134 S. Ct. at 1122 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The defendant cannot "be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475 (citations omitted) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984)). Only if the court finds that the plaintiff has satisfied the purposeful availment prong does the court need to consider the remaining prongs of the specific jurisdiction test. Consulting Engineers, 561 F.3d at 278.

**B. Analysis**

Pathfinder contends that Core Cashless is subject to both general jurisdiction and specific jurisdiction in North Carolina. (Pl.'s Opp'n 18–19, ECF No. 15.) As to general jurisdiction, the Court finds that Core Cashless is not "essentially at home" in North Carolina. See Goodyear, 131 S. Ct. at 2851. Core Cashless is not incorporated in North Carolina and does not maintain its principal place of business in North Carolina. (See Compl. ¶ 3, ECF No. 1.) This case also does not present an exceptional circumstance where Core Cashless could be deemed "essentially at home" in North Carolina despite these facts. See Daimler, 134 S. Ct. at 761 n.19. Pathfinder has presented no argument to the contrary. The Court therefore lacks general jurisdiction over Core Cashless and proceeds to an analysis of specific jurisdiction.

9

To make a prima facie showing of a basis for specific jurisdiction, Pathfinder must first demonstrate that Core Cashless has purposefully availed itself of the privilege of conducting activities in North Carolina. See Universal Leather, 773 F.3d at 559. Pathfinder argues that Core Cashless has made sufficient minimum contacts with North Carolina by providing software support to the Library, partnering with North Carolina-based BPR Properties to provide software systems to a water park in Georgia, maintaining a website that allows North Carolina residents to contact Core Cashless, and offering a mobile application that at least three North Carolina residents have downloaded. (See Pl.'s Opp'n 4–6, ECF No. 15.) Pathfinder further argues that the exercise of specific jurisdiction in North Carolina is proper because Core Cashless' alleged infringement "had the effect of injuring Pathfinder in North Carolina." (Id. at 16.)

Turning first to Core Cashless' contract with the Library, the Court finds that the quality and nature of the contract is insufficient to subject Core Cashless to specific jurisdiction in North Carolina. A contract with an in-state entity does not automatically establish minimum contacts with the forum state. See Burger King, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Rather, "[i]t is essential that the contract . . . have a 'substantial connection' with the forum state." Chung v. NANA Dev. Corp., 783 F.2d 1124, 1128 (4th Cir. 1986) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The Supreme Court has recognized that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real

10

object of the business transaction." Burger King, 471 U.S. at 479 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316–17 (1943)). A court must therefore evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when determining whether a defendant has purposefully established minimum contacts through the contract. Id.

Core Cashless' contract with the Library does not envision substantial or wide-reaching contacts with North Carolina. While Core Cashless provides software support to the Library each year, Core Cashless employees have never traveled to North Carolina or made in-person contact with any North Carolina resident regarding the contract. See (Owen Decl. ¶¶ 10–11, ECF No. 11-1); Universal Leather, 773 F.3d at 560 (including "in-person contact with the resident of the forum in the forum state regarding the business relationship" as a factor in the purposeful availment analysis). The $7,000 revenue that Core Cashless derives from the contract makes up a minimal portion of its annual revenue; in 2013, it amounted to only 0.13% of Core Cashless' $5.2 million revenue. (See Owen Decl. ¶¶ 17, 25, ECF No. 11-1.) Further, Core Cashless has never sought to increase or expand its relationship with the Library. (Id. ¶ 18.) Pathfinder has also not alleged that Core Cashless and the Library engaged in prior contract negotiations in North Carolina. Based on these considerations, the Court is unable to find a substantial connection between the contract and North Carolina and does not believe Core Cashless should "reasonably anticipate being haled into court" in North Carolina as a result of its contract with the Library. See Universal Leather, 773 F.3d at 559.

Core Cashless' relationship with BPR Properties is likewise insufficient to support the exercise of specific jurisdiction. The relationship is announced in the opening line of Core Cashless' press release: "CORE Cashless continues it[s] recent success by partnering up with North Carolina based BPR Properties . . . to provide a variety of cashless solutions for the brand new Pooler Water Park, located in Savanna[h], GA." (Press Release, ECF No. 15-2.) Based on this press release, Pathfinder argues that Core Cashless has "promoted" and "advertised" its work with BPR Properties. (Pl.'s Opp'n 4–5, ECF No. 15.) At oral argument, Pathfinder characterized the press release as saying, "Hey, North Carolina folks, we're here for you," and, "We've already got a presence in North Carolina. Come join us here." The Court does not interpret the reference to North Carolina in the press release as an invitation for North Carolina residents to engage in business with Core Cashless but rather interprets it as simply a statement of the fact that BPR Properties is based in North Carolina. This statement is insufficient to subject Core Cashless to jurisdiction in North Carolina because a defendant does not forge a purposeful connection with a state merely by mentioning the state in an online publication. See Young v. New Haven Advocate, 315 F.3d 256, 258–59 (4th Cir. 2002) (holding that Connecticut newspapers did not manifest any intent of targeting Virginia by posting Internet articles about the warden of a Virginia prison). The lack of purposeful availment becomes even more apparent when viewing the reference to North Carolina in the context of the full press release, which primarily focuses on the software systems to be installed at the water park and does not suggest any attempt to specifically target North Carolina residents. (See Press Release, ECF No. 15-2.)

12

Further, Pathfinder has not alleged facts suggesting that Core Cashless and BPR Properties entered into a contractual relationship with substantial connections to North Carolina. Pathfinder has not alleged that negotiations between Core Cashless and BPR Properties took place in North Carolina or that any activity contemplated between Core Cashless and BPR Properties will take place in North Carolina. To the contrary, it appears that all such activity will take place in Georgia, where the water park is located. See (Press Release, ECF No. 15-2); Universal Leather, 773 F.3d at 560 (including "whether the performance of contractual duties was to occur within the forum" as a factor in the purposeful availment analysis). As Core Cashless argues, "[t]he fact that the company that owns the park has headquarters in North Carolina is . . . simply 'fortuitous'" and not indicative of purposeful availment. (Def.'s Reply 3, ECF No. 18.)

Turning to Core Cashless' website, the Court applies the "sliding scale" model articulated in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), and adopted by the Fourth Circuit in ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002). The Zippo model recognizes a sliding scale for defining when a defendant's Internet activity is sufficient to support personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user

13

> can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

ALS Scan, 293 F.3d at 713–14 (alteration in original) (quoting Zippo, 952 F. Supp. at 1124). "[A]dopting and adapting" the Zippo model, the Fourth Circuit held that jurisdiction is appropriate when the nonresident defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." Id. at 714.

Core Cashless' website is semi-interactive, falling in the middle of the Zippo spectrum. It allows visitors to "exchange information with the host computer," see id., by submitting an inquiry through the website and by completing a mock transaction using a test credit card, for the purpose of testing Core Cashless' product. (See Owen Decl. ¶ 21, ECF No. 11-1; Pl.'s Opp'n 14, ECF No. 15.) The website does not, however, allow Core Cashless to "enter[] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," see ALS Scan, 293 F.3d at 713, as visitors cannot make purchases through the website. (Owen Decl. ¶ 22, ECF No. 11-1.) Further, the website has led to no contracts, sales, or business for Core Cashless in North Carolina. (Def.'s Mem. 10, ECF No. 11; Owen Decl. ¶ 23, ECF No. 11-1.)

Applying the Fourth Circuit's framework, the Court concludes that Core Cashless' semi-interactive website does not subject it to personal jurisdiction in North Carolina. Nothing about the website suggests that Core Cashless has specifically directed electronic activity toward North Carolina with any manifested intent of engaging in business or other

14

interactions in the state. Pathfinder, to support its argument that Core Cashless' website is directed to residents of North Carolina, explains that "[w]hen a North Carolinian responds to the advertising" on the website, a Core Cashless representative follows up and attempts to make a sale. (Pl.'s Opp'n 4, ECF No. 15.) This is true, however, not just for residents of North Carolina but for individuals worldwide. (See Def.'s Reply 6, ECF No. 18 (explaining that Core Cashless targets North Carolina no more than it targets the entire world).) The fact that one North Carolina resident has submitted an inquiry on Core Cashless' website and received a follow-up email and phone call is inconsequential. See (Pl.'s Opp'n 4–5, ECF No. 15); Walden, 134 S. Ct. at 1122 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."); cf. Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) (stating that sales to South Carolina residents were "not the result of sales efforts by [the defendant] in South Carolina" but were rather "initiated by the customer"). While Pathfinder insists that Core Cashless "seriously solicits customers from North Carolina" through its website (Pl.'s Opp'n 11, ECF No. 15), it has not alleged sufficient facts to allow the Court to draw the same conclusion. The Court therefore is unable to conclude that Core Cashless' website supports the exercise of specific jurisdiction. See Pub. Impact, LLC v. Bos. Consulting Grp., Inc., --- F. Supp. 3d ---, 2015 WL 4622028, at *10 (M.D.N.C. Aug. 3, 2015) (finding a website that was "broadly directed toward a 'global' audience" was not "specifically targeted at North Carolina"). Core Cashless' Facebook and Twitter pages are likewise insufficient to support personal jurisdiction, as Pathfinder has not alleged that the social media pages are specifically tailored for a North Carolina audience. See (Pl.'s Opp'n

15

5–6, ECF No. 15); Intercarrier Commc'ns, LLC v. Kik Interactive, Inc., No. 3:12-cv-771-JAG, 2013 WL 4061259, at *4 (E.D. Va. Aug. 9, 2013) (explaining that a defendant's self-promotion on Facebook and Twitter does not support a Virginia court's exercise of personal jurisdiction because there was no evidence that the defendant targeted Virginia specifically).

Similarly, Core Cashless' mobile application also fails to subject Core Cashless to specific jurisdiction in North Carolina. Nothing about the application suggests an intent to target North Carolina or "solicit[] . . . North Carolina businesses and individuals" (see Pl.'s Opp'n 1, ECF No. 15), particularly because the application cannot be used at any entertainment venue in North Carolina. (See Def.'s Reply 4 n.1, ECF No. 18 (explaining that no entertainment venues in North Carolina use the Core Cashless system).) The fact that North Carolina residents can download the application does not alter this result, as the application is available to Android smartphone and tablet users all over the world. See (Def.'s Reply 4, ECF No. 18); Intercarrier Commc'ns LLC v. WhatsApp Inc., No. 3:12-cv-776-JAG, 2013 WL 5230631, at *4 (E.D. Va. Sept. 13, 2013) (rejecting the defendant's argument that "a company 'consciously' or 'deliberately' targets a forum if a user unilaterally downloads or uses its software within that forum"). Nor does the fact that Google, which operates GooglePlay, "provides much of its data services through its computers located [in] North Carolina." (See Pl.'s Opp'n 5, ECF No. 15.) Google's decision to locate computer servers in North Carolina is the "unilateral activity" of a third party, which "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State," Helicopteros, 466 U.S. at 417. See Carefirst, 334 F.3d at 402 (finding it unreasonable to expect a defendant to "foresee[] that it could be haled into a Maryland

court" merely because it had utilized servers owned by a Maryland company); cf. ALS Scan, 293 F.3d at 714–15 (holding that an Internet service provider did not subject itself to personal jurisdiction by providing the bandwidth that enabled a website owner to publish allegedly infringing photographs on the Internet).

Advancing one additional argument in support of purposeful availment, Pathfinder contends that its "position as an injured North Carolina resident further solidifies the sufficiency of [Core Cashless'] contacts" with North Carolina. (Pl.'s Opp'n 16, ECF No. 15.) Pathfinder relies on the "effects" test of Calder v. Jones, 465 U.S. 783 (1984), where the Supreme Court held that a California court could exercise personal jurisdiction over the out-of-state author and editor of an allegedly libelous magazine article when "their intentional, and allegedly tortious, actions were expressly aimed at California" and had the effect of causing harm in California. See id. at 784, 788–89 (relying on the facts that the article, which was published in a magazine with a large circulation in California, was about a California resident, discussed her California career, and drew from California sources). Pathfinder argues that Core Cashless engaged in "purposeful tortious activity in North Carolina," knowing it would harm Pathfinder in North Carolina. (Pl.'s Opp'n 9–10, ECF No. 15.) This argument overlooks the fact that in Calder, "the 'effects' caused by the defendants' article . . . connected the defendants' conduct to *California*, not just to a plaintiff who lived there," Walden, 134 S. Ct. at 1124. Pathfinder has not shown that the effects of Core Cashless' alleged infringement create a connection between Core Cashless and North Carolina, as opposed to a connection between Core Cashless and Pathfinder.

17

Taken together, Core Cashless' connections to North Carolina are a single software support contract with a North Carolina entity amounting to a minimal portion of its annual revenues, a partnership with a North Carolina company to provide software products for a water park located in Georgia, a globally accessible website that does not allow visitors in North Carolina (or elsewhere) to make online purchases, a globally accessible mobile application that can be downloaded by North Carolina residents but cannot be used in North Carolina, and no showing of injurious conduct connected to North Carolina. The quality and nature of these connections are insufficient to satisfy the purposeful availment prong of the specific jurisdiction test. Because Pathfinder fails at the first prong, the Court need not proceed to the second and third prongs. See Consulting Engineers, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three."). Pathfinder has thus failed to make a prima facie showing of either general or specific jurisdiction, and the case must be dismissed for lack of personal jurisdiction. The Court therefore need not address Core Cashless' alternate argument for dismissal, that venue in this district is improper.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Core Cashless' Motion to Dismiss (ECF No. 10) is GRANTED, based on lack of personal jurisdiction, and this case is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Core Cashless, LLC's Motion Asking the Court to Disregard Plaintiff's Brief in Surreply (ECF No. 20) is GRANTED.

IT IS FURTHER ORDERED that Core Cashless' Consent Motion for Extension of Time to File Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (ECF No. 17) is retroactively GRANTED.

This, the 28th day of August, 2015.

/s/ Loretta C. Biggs
United States District Judge